[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] CORRECTED MEMORANDUM OF DECISION RE: MOTIONS FOR SUMMARY JUDGMENT
 Facts
These two cases arise from the same set of circumstances, an automobile accident that occurred on September 9, 1993. The complaints were filed by the plaintiffs pursuant to General Statutes § 52-592(a), the accidental failure of suit statute.[1] The defendants have now filed motions for summary judgment on the grounds that the applicable statute of limitations, General Statutes § 52-584, has expired and that § 52-592 is inapplicable.
A review of the history of the previous action filed by the present plaintiffs against the present defendants is necessary to a full understanding and resolution of the defendants' motions. The following facts are not in dispute. The automobile accident from which the plaintiffs' claims arise occurred on September 9, 1993. The complaint in the original action, Freeman v. Ryder Truck Rental, Inc., Docket No. 535929, was fifed in the judicial district of New London at New London on September 19, 1995.[2] Service was made on the defendants more than two years after the alleged date of the accident. The defendants, however, apparently never raised the issue of the expiration of the statute of limitations provided in General Statutes § 52-584, presumably because process was delivered to the sheriff on September 8, 1995, thus bringing the case within the am bit of General Statutes § 52-593a.[3]
Following the filing of various pleadings, including multiple amended complaints, the original action was dismissed for dormancy pursuant to Practice Book § 14-3 on December 27, 1996. The plaintiffs' motion to reopen was subsequently granted on April 18, 1997. Following the reopening of the case, the plaintiffs filed a fourth amended complaint and the defendants filed requests to revise. The case was then dismissed for dormancy a second time on December 12, 1997. On February 11, 1998, the plaintiff filed another motion to reopen, which the court granted on March 3, 1998. As a condition of granting the motion to reopen, the court required the plaintiff to claim the case to the trial list within sixty days (by May 2, 1998).
On December 12, 1997, the same day as the second dormancy dismissal, CT Page 1146 the plaintiff fifed with the court a fifth amended complaint, but copies of this amended complaint were never received by the defendants. On March 26, 1998, the plaintiff filed a motion for default for failure to plead against all defendants. The defendants, having never received the fifth amended complaint, filed objections to the motion for default. The court sustained the objections, and ordered the plaintiffs to file a revised complaint by May 5, 1998, if one had not been filed already. The plaintiffs subsequently sent copies of the fifth amended complaint to the defendants.
On April 7, 1998, the defendants Ryder Truck Rental, Inc., Sealy Connecticut, Inc. and Timothy King, having received a copy of the plaintiffs' fifth amended complaint, filed a motion for extension of time to respond. On April 21, 1998, the court granted the motion, giving those defendants until May 21, 1998 to file a responsive pleading.
It appears that the plaintiff took no further action to attempt compliance with the court's March 3, 1998 order that the case be claimed to the trial list by May 2, 1998. On May 12, 1998, the defendants Clayton McCarthy and Connecticut Hospital Management filed a motion for entry of nonsuit with prejudice. The defendant Joseph B. Lionetti filed a substantially identical motion on May 13, 1998. The basis for the motions was the plaintiffs' failure to claim the case to the trial list by May 2, 1998. The court granted the motions for nonsuit with prejudice on September 8, 1998. On September 10, 1998, two days after the court granted the motion for nonsuit, and nearly four months after the filing of the motion, the plaintiffs for the first time filed an objection to the motion for nonsuit. In their objection, the plaintiffs argued for the first time that the court's granting of the other defendants' (Ryder, Sealy, and King) motion for extension of time on April 21, 1998 had made it impossible for the plaintiffs to close the pleadings and claim the case to the trial list by May 2, 1998.
The plaintiffs subsequently filed a sixth amended complaint on September 22, 1998 as well as a motion for reconsideration of the granting of the motion for nonsuit. The court granted the motion for reconsideration and heard oral argument on March 4, 1999. After oral argument, the court entered the following order: "Nonsuits granted as to defendants Clayton McCarthy and Connecticut Hospital Management Corporation are confirmed as of this date after hearing. Nonsuit filed by the defendant Joseph Lionetti is granted. No other defendants have filed a motion for nonsuit. The case is still pending as to Ryder Truck Rental Inc., Sealy Connecticut Inc. and Timothy King." On June 14, 1999, Ryder, Sealy and King filed a motion for nonsuit with prejudice, which was granted on July 29, 1999. CT Page 1147
On August 4, 1999, Arthur R. Freeman and Elsie Freeman filed the complaint in Freeman v. McCarthy, Docket No. 118347, against the defendants Clayton S. McCarthy, Connecticut Hospital Management Corporation and Joseph B. Lionetti. On November 3, 1999, Elsie Freeman filed the complaint in Freeman v. King, Docket No. 118911, against the defendants Timothy King, Ryder Truck Rental, Inc. and Sealy Connecticut, Inc. The complaints contain substantially the same allegations and seek substantially the same relief as the complaint in the earlier action. Presently before the court are the motions for summary judgment filed by Clayton S. McCarthy, Connecticut Hospital Management Corporation, Timothy King, Ryder Truck Rental, Inc. and Sealy Connecticut, Inc.[4] Those defendants seek summary judgment on the ground that the applicable statute of limitations contained in General Statutes § 52-584 has expired. The defendants argue that the previous action does not come within General Statutes § 52-592, and that the present action is therefore barred by the statute of limitations.
 Discussion
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Doucette v.Pomes, 247 Conn. 442, 452, 724 A.2d 481 (1999); see also Practice Book § 17-49. "In deciding a motion (or summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) Serranov. Burns, 248 Conn. 419, 424, 727 A.2d 1276 (1999). "Although the party seeking summary judgment has the burden of showing the non-existence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." Home Ins. Co. v. Aetna Life Casualty Co., 235 Conn. 185,202, 663 A.2d 1001 (1995). "The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence." (Internal quotations marks omitted.) Pion v. Southern NewEngland Telephone Co., 44 Conn. App. 657, 663, 691 A.2d 1107 (1997). "Summary judgment may be granted where the claim is barred by the statute of limitations." Doty v. Mucci, 238 Conn. 800, 806, 679 A.2d 945 (1996).
It is apparent, and the plaintiffs do not dispute, that the present actions were filed long after the expiration of the statute of limitations contained in General Statutes § 52-584.[5] The accident in question occurred on September 9, 1993, and the present complaints were not filed until late 1999. The motion for summary judgment should CT Page 1148 therefore be granted unless the action is saved by § 52-592.
The plaintiffs' argument in opposition to the motions for summary judgment is that the present actions are properly brought under §52-592 because the previous action "failed . . . to be tried on its merits . . . for any matter of form. . . ." The defendants argue, however, that because the actions of the plaintiffs in the previous action went beyond accident or mere negligence, the "matter of form" provision of § 52-592 is inapplicable. For the reasons set forth below, the court agrees with the defendants.
Our Supreme Court has established that a judgment of dismissal pursuant to Practice Book § 14-3 does not automatically preclude a plaintiff from bringing a subsequent action pursuant to § 52-592. See Lacassev. Burns, 214 Conn. 464, 572 A.2d 357 (1990). More recently, the Supreme Court has clarified the issue in the case of Ruddock v. Burrowes,243 Conn. 569, 706 A.2d 967 (1998). "[I]n appropriate cases, a dismissal entered pursuant to [Practice Book § 14-3] would not bar a subsequent action brought under the authority of § 52-592. . . . Disciplinary dismissals do not, in all cases, demonstrate the occurrence of misconduct so egregious as to bar recourse to § 52-592. . . . Whether the statute applies cannot be decided in a factual vacuum. To enable a plaintiff to meet the burden of establishing the right to avail himself or herself of the statute, a plaintiff must be afforded an opportunity to make a factual showing that the prior dismissal was a `matter of form' in the sense that the plaintiff's noncompliance with a court order occurred in circumstances such as mistake, inadvertence or excusable neglect. See General Statutes § 52-212." (Citations omitted; internal quotation marks omitted.) Ruddock v. Burrowes, supra, 243 Conn. 576-77. "The fact that courts have allowed plaintiffs access to § 52-592(a) in some cases involving § [14-3] dismissals does not mean that we must allow recourse to the statute if the attorney's misconduct is egregious." Id., 576 n. 11. "A trial court, for example, might find an attorney's misconduct to be egregious if the attorney represented that his nonappearance was caused by difficulties with his car without disclosing that he had ready access to alternative transportation. A trial court might make a similar finding if, in one case, the attorney repeatedly, and without credible excuse, delayed scheduled court proceedings. Nonappearances that interfere with proper judicial management of cases, and cause serious inconvenience to the court and to opposing parties, are categorically different from a mere failure to respond to a notice of dormancy pursuant to Practice Book § [14-3]; see Lacasse v. Burns, supra, 214 Conn. 474; or a single failure to appear, in a timely fashion, after a luncheon recess. See Gionfrido v. Wharf Realty, Inc., [193 Conn. 28, 34 n. 6, 474 A.2d 787 (1984)]." Ruddock v. Burrowes, supra, 243 Conn. 576 n. 12. CT Page 1149
A case-by-case determination of whether a case falls within the scope of § 52-592 is necessitated by "the intersection of two principles firmly established in our law. On the one hand, in a long line of cases, we have held that § 52-592(a) is remedial in nature and, therefore, warrants a broad construction. See, e.g., Lacasse v. Burns, 214 Conn. 464,470, 572 A.2d 357 (1990); Isaac v. Mount Sinai Hospital, 210 Conn. 721,728, 557 A.2d 116 (1989); Broderick v. Jackman, 167 Conn. 96, 97,355 A.2d 234 (1974); Ross Realty Corp. v. Surkis, 163 Conn. 388, 393,311 A.2d 74 (1972); Baker v. Baningoso, 134 Conn. 382, 387, 58 A.2d 5
(1948); Johnston v. Sikes, 56 Conn. 589, 591-92 (Superior Court 1888). Apparently acceding in our assessment of its intent, the legislature, over the years, repeatedly has broadened eligibility for the relief afforded by the statute. Broderick v. Jackman, supra, 97-99. On the other hand, our decisions also have underscored the importance of trial court caseflow management of crowded dockets. "Caseflow management is based upon the premise that it is the responsibility of the court to establish standards for the processing of cases and also, when necessary, to enforce compliance with such standards. Our judicial system cannot be controlled by the litigants and cases cannot be allowed to drift aimlessly through the system.' In re Mongillo, 190 Conn. 686, 691,461 A.2d 1387 (1983); Gionfrido v. Wharf Realty, Inc., 193 Conn. 28, 32-33,474 A.2d 787 (1 984). In the event of noncompliance with a court order, the directives of caseflow management authorize trial courts, in appropriate circumstances, to take action against either the errant attorney or the litigant who freely chose the attorney." Ruddock v.Burrowes, supra, 243 Conn. 575.
"We have not often decided that a plaintiff, after a dismissal under an applicable rule of practice, should be denied access to the statute because the prior judgment was not a `matter of form.' When we have done so, our decision has focused on conduct other than mistake, inadvertence or excusable neglect. For example, we have held that § 52-592(a) affords no relief in cases in which a plaintiff's prior action was dismissed because the plaintiff withdrew it voluntarily; see Parrott v.Meacham, 161 Conn. 573, 575, 290 A.2d 335 (1971); Baker v. Baningoso, supra, 134 Conn. 387; or consented to its dismissal. Such consent may be inferred from a plaintiff's failure to file a memorandum in opposition to a defendant's motion to strike; Hughes v. Bemer, 206 Conn. 491, 495,538 A.2d 703 (1988); or from a plaintiff's inordinate delay in appointing an administrator or executor. Walworth v. Hartford Hospital,23 Conn. App. 404, 408-409, 580 A.2d 545 (1990)." Ruddock v. Burrowes, supra, 243 Conn. 577-78.
The question that must be decided by this court, therefore, is whether the plaintiffs' actions in the previous case amount to something more CT Page 1150 than mere "mistake, inadvertence or excusable neglect." A number of Superior Court judges have previously been faced with a similar task, and their conclusions offer considerable guidance. On the one hand, the filing of a new action has been allowed under § 52-592 in a case where the delay in prosecuting the earlier action was due to the defendant's motion to stay. See Morande Bros., Inc. v. Mazda Motors ofAmerica, Inc., Superior Court, judicial district of Hartford, Docket No. 576027 (October 29, 1998, Peck, J.). In another case, the plaintiff answered a discovery request only after the court granted a motion for order of compliance. The case was subsequently dismissed for dormancy. While the plaintiff's motion to set aside the dismissal was pending, the plaintiff failed to attend a settlement conference. After the court granted the motion to set aside the dismissal, the case was again dismissed when counsel for the plaintiff failed to attend a pretrial conference because she was in court with another trial. The court ruled that although "the transgressions of the plaintiff's attorneys bring this case close to the line," the plaintiff was not precluded from bringing another action under § 52-592. Delahunty v. Massachusetts Mutual LifeIns. Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 408550 (April 29, 1998, Levin, J.) (22 Conn. L. Rptr. 69, 71).
Falling on the other side of this line are the cases in which plaintiffs have not been permitted to file a new action under § 52-592. In a recent medical malpractice case, Ruggiero v. Zeppieri, Superior Court, judicial district of New London at New London, Docket No. 549098 (May 4, 2000, Corradino, J.) (27 Conn. L. Rptr. 162), the plaintiff attempted to file a new action pursuant to § 52-592. The complaint in the original action was served beyond the statute of limitations and apparently was saved only by operation of § 52-193a. Id., 163. The claims against one defendant were dismissed because of the plaintiff's failure to comply with a request to revise. Nine months later, the plaintiff filed a new action against both defendants, despite the fact that the earlier action was still pending with respect to one defendant. The court subsequently dismissed both actions pursuant to Practice Book § 14-3. The plaintiff, 364 days later, filed the action pursuant to § 52-592.
In granting summary judgment for the defendant, the court considered the principles behind statutes of limitations: "Defendants . . . have rights, too. . . . Statutes of limitation are passed so that after a certain time, people can go about their lives without the fear of litigation haunting them and so that actions [are] brought sufficiently close to an occurrence to enable defendants to gather that evidence necessary to defend themselves. . . . Accident and simple negligence which result in a case's dismissal are said to not be sufficient reason CT Page 1151 to deprive a litigant of resort to an ameliorative statute such as §52-592. But more than that is involved here. To countenance what occurred here would render statutes of limitations pointless. Accident and simple negligence, at least in part, have to be defined in terms of the effect of the plaintiff lawyer's actions on the rights of the defendant, including those rights reflected in policies behind statutes of limitation. When the effect is great, to the point of being unfair and unreasonably interfering with the right to defend, then conduct causing that effect can be said to be egregious." Id.
In a number of other cases decided subsequent to Ruddock, the judges of the Superior Court have concluded that the conduct leading to the dismissal of an action was sufficiently egregious to preclude the filing of a new action under § 52-592. See Campanaro v. Jenkins, Superior Court, judicial district of Middlesex, Docket No. 085603 (April 15, 1999, Schuman, J.) (case was dismissed under Practice Book § 14-3, dismissed a second time for failure to attend pretrial conference, and plaintiff delayed nearly four months in filing motion to reopen judgment); Gulycz v. Giant Bicycle Corp., Superior Court, judicial district of New Britain, Docket No. 485167 (March 31, 1999, Graham, J.) (two dormancy dismissals more than one and one-half years apart, and plaintiff's continuous non-compliance with discovery); Gillum v. YaleUniversity, Superior Court, judicial district of New Haven at New Haven, Docket No. 409666 (December 23, 1998, Blue, J.) (three disciplinary dismissals, the last of which was for failure to attend a pretrial conference).
In the present case, as discussed above, the plaintiffs' original action was brought at the very end of the statute of limitations. The case was then dismissed twice because of the plaintiffs' lack of diligence in prosecuting their action. The second dismissal was set aside on the express condition that the plaintiffs claim the case to the trial list by a given date. This the plaintiffs failed to do, and the defendants subsequently moved for a judgment of nonsuit. Only after the judgment of nonsuit had entered nearly four months later did the plaintiffs make any objection. The result is that nearly seven years after the underlying events, this action is still at the most preliminary stages. The plaintiffs' conduct goes far beyond mere "mistake, inadvertence or excusable neglect." There is no excuse, and the plaintiffs offer no explanation, for allowing a judgment of nonsuit to enter unopposed. This is especially true in the present case because the plaintiffs were given a third chance to prosecute their case contingent on claiming the case to the jury list within sixty days. In such a situation, it was incumbent on the plaintiffs to see that the condition was met or to call to the court's attention any circumstances that might prevent compliance. This the plaintiffs failed to do. CT Page 1152
Furthermore, the plaintiffs have "the burden of establishing the right to avail [themselves] of the [accidental failure of suit] statute. . . ."Ruddock v. Burrowes, supra, 243 Conn. 577. The plaintiffs have, however, produced no evidence "showing that the prior dismissal was a `matter of form' in the sense that the [plaintiffs'] noncompliance with a court order occurred in circumstances such as mistake, inadvertence or excusable neglect." Id.
 Conclusion
For all of the reasons stated above, the motion for summary judgment filed by the defendants Clayton S. McCarthy and Connecticut Hospital Management Corporation is granted in Freeman v. McCarthy, Docket No. 118347. For the same reasons, the motion for summary judgment filed by the defendants Timothy King, Ryder Truck Rental, Inc. and Sealy Connecticut, Inc. in Freeman v. King, Docket No. 118911 is granted.
Martin, J.